[No. 26266-1-I.    Division One.    February 10, 1992.]

SCOTT NELSON, ET AL, *Respondents*, v. NATIONAL FUND
RAISING CONSULTANTS, INC., *Appellant*.

*Charles K. Wiggins, John W. Hathaway,* and *Edwards, Sieh, Wiggins & Hathaway, P.S.,* for appellant.

*Gary M. Abolofia,* for respondents.

AGID, J. — Appellant National Fund Raising Consultants, Inc. (NFRCI), appeals the injunctive relief granted by the trial court below. Its arguments focus on the trial court's determination that royalty payments required under NFRCI's agreement with the respondents, the Nelsons, were unenforceable as a violation of the Franchise Investment Protection Act, RCW 19.100, while, at the same time, restraining NFRCI from operating within the exclusive territory granted the Nelsons in that same agreement for a period of 18 months. We affirm in part and reverse in part.

NFRCI is a Colorado corporation formed in 1983. It now operates in 19 states and specializes in coordinating pizza fund-raising programs for nonprofit organizations. Maurice DeShazer is one of NFRCI's founders and its president. Scott and Katherine Nelson (the Nelsons), respondents herein, entered into a business relationship with DeShazer

in April 1985, becoming "area managers" or commissioned salespersons for NFRCI in Washington. As area managers, the Nelsons earned $1 for each pizza sold. NFRCI paid all costs associated with the sale and was paid directly by the nonprofit organization.

In October 1985, the Nelsons became "area directors". Unlike area managers, area directors were paid directly by the nonprofit organizations and paid the costs associated with the sales themselves. As area directors, the Nelsons entered into a "Total Requirements Agreement" with NFRCI. Under the terms of that agreement, the Nelsons paid both an initial $15,000 fee and ongoing royalties. In return, they were granted an exclusive territory in the state of Washington within which NFRCI promised not to compete or to sell a franchise to any other person. Other assistance and materials provided by NFRCI to the Nelsons included information concerning customers, sales, revenues and income of managers and directors in other areas, training manuals, incentive programs and awards, a monthly newsletter, liability insurance, legal assistance, and various sales paraphernalia. DeShazer also created a Colorado corporation known as National Fund Raising Consultants of Washington, Inc. (NFRC of Washington), which was transferred to the Nelsons after the new corporation had ratified the Total Requirements Agreement.

The Total Requirements Agreement further provided that the Nelsons were to purchase all supplies through NFRCI, which made arrangements for the provision of pizza materials by a local distributor. The ongoing royalty payments required under the terms of the agreement were calculated as a percentage of the cost of those supplies. Based on their own calculations, the Nelsons determined that the markup was 20 percent.

NFRCI did not become a registered franchiser in Washington until February 1988, when it came to understand that its attempt to avoid the franchise laws was in fact unlawful. NFRCI presented a new agreement, revised to reflect the franchise registration, to the Nelsons in April

1988. The Nelsons, who had by then become the most successful area directors within NFRCI, declined to execute that agreement. Negotiations with respect to the franchise agreement and the possibility of the Nelsons' purchasing a portion of NFRCI ensued and continued through 1988 and into 1989. The Nelsons stopped making royalty payments to NFRCI in February 1989. On June 7, 1989, the Nelsons sent DeShazer a letter advising him that NFRC of Washington intended to operate independently of NFRCI after that date. Negotiations continued after DeShazer received the letter, however, and the trial court found that the letter did not terminate the parties' relationship. On October 24, 1989, DeShazer sent the Nelsons a letter purporting to accept their resignation as tendered in their June 7, 1989, letter. Because DeShazer sent the letter by regular mail and not by registered mail as required by the Total Requirements Agreement, the court found that it, too, did not terminate the agreement.

In October 1989, NFRCI hired Randy Nelson[1] as an area manager to conduct fund-raising activities within the same area of Washington state covered by the exclusive territory clause in its Total Requirements Agreement with the Nelsons. In November 1989, NFRCI, through DeShazer and Randy Nelson, sent each of Scott and Katherine Nelson's customers Thanksgiving cards from which those customers could have inferred that it was NFRCI with which they had previously dealt, rather than the Nelsons' corporation, NFRC of Washington. The Nelsons then brought this action to enforce the exclusive territory covenant in the Total Requirements Agreement.

Both sides sought injunctive relief. The trial court found that the relationship between NFRCI and the Nelsons was a franchise not exempt from registration under Washington law; the transaction was therefore the unlawful sale of an unregistered franchise by DeShazer and NFRCI in violation of RCW 19.100.020; the percentage markup cost of the

---

[1]Randy Nelson is not related to Scott and Katherine Nelson.

materials and the requirements provision was unenforceable both as a violation of the Franchise Investment Protection Act, RCW 19.100.180(2)(d), and as an unfair and deceptive business practice under the Consumer Protection Act, RCW 19.86; and competition by NFRCI with the Nelsons within their exclusive territory was a violation of RCW 19.100-.180(2)(f) and an unfair and deceptive business practice under RCW 19.86.

The court granted the following injunctive relief: (1) restraining each side from using the information provided by the other with respect to customer organization names, sponsors, and data concerning sales made, which the court had determined constituted a trade secret; (2) requiring that any benefit obtained as a result of the use of such information, including the mailing of the Thanksgiving cards, was to be passed on to the party that was the source of that information; and (3) because of potential customer confusion between the names of the two corporations, restraining the Nelsons from doing business under the name NFRC of Washington. This portion of the order was subject to a 6-month grace period to expire on August 8, 1990, after which neither party was to use the name "National Fund Raising Consultants" in the exclusive Washington territory until August 8, 1991, when NFRCI was again permitted to do business under that name in Washington.

The parties appeal only the trial court's grant of injunctive relief. Hearings on the remaining issues are pending, and no final rulings on damages, attorney fees, or costs have been made.

I

STANDARD AND SCOPE OF REVIEW

■ The standard under which we review an injunction is whether the trial court abused its discretion in fashioning the remedy. *Blair v. WSU*, 108 Wn.2d 558, 564, 740 P.2d 1379 (1987) (citing *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). This standard applies to both

the permanent and temporary aspects of the injunctive relief granted. *Benton City v. Adrian*, 50 Wn. App. 330, 338, 748 P.2d 679 (1988). The trial court is vested with broad discretion to fashion injunctive relief appropriate to the facts, circumstances, and equities before it. *Brown v. Voss*, 105 Wn.2d 366, 373, 715 P.2d 514 (1986). Great weight is given to the trial court's exercise of that discretion. *Brown*, 105 Wn.2d at 373. A trial court abuses its discretion only when its decision is based on untenable grounds, is manifestly unreasonable, or is arbitrary. *Junker*, 79 Wn.2d at 26. Further, we may not substitute our findings for the factual findings of the trial court below where those findings are supported by substantial evidence. *Brown*, 105 Wn.2d at 372. Our role is limited to reviewing the record for the presence of evidence supporting those findings and does not extend to weighing that evidence or evaluating its credibility. *Department of Licensing v. Sheeks*, 47 Wn. App. 65, 69, 734 P.2d 24, *review denied*, 108 Wn.2d 1021 (1987).

██ The elements of an injunction under the statute are (1) the existence of a clear legal or equitable right; (2) a well-grounded fear of immediate invasion of that right; and (3) a showing that the acts to be enjoined are or will result in actual and substantial injury to the plaintiff.[2] *Washington Fed'n of State Employees Coun. 28 v. State*, 99 Wn.2d 878, 887, 665 P.2d 1337 (1983). In deciding whether to grant or deny a request for a permanent injunction,[3] a trial court

---

[2]An injunction may issue in the following circumstances:

"When it appears by the complaint that the plaintiff is entitled to the relief demanded and the relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which during the litigation would produce great injury to the plaintiff; or when during the litigation, it appears that the defendant is doing, or threatened, or is about to do, or is procuring, or is suffering some act to be done in violation of the plaintiff's rights respecting the subject of the action tending to render the judgment ineffectual; or where such relief, or any part thereof, consists in restraining proceedings upon any final order or judgment, an injunction may be granted to restrain such act or proceedings until the further order of the court . . .." RCW 7.40.020.

[3]To determine whether a party is entitled to preliminary injunctive relief, a court must analyze the moving party's likelihood of prevailing on the merits; in

must make a comparative appraisal of all the factors in the case, including the following:

> The character of the interest to be protected, the relative adequacy to the plaintiff of injunction and of other available remedies such as damages; plaintiff's delay in bringing suit, plaintiff's misconduct, if any; the relative hardship likely to result to defendant if the injunction is granted and to plaintiff if it is denied; the interest of third parties and of the public, and the practicability of framing and enforcing the order or judgment.

*Seattle v. Nazarenus*, 60 Wn.2d 657, 669, 374 P.2d 1014 (1962) (quoting *Pacific Gas & Elec. Co. v. Minnette*, 115 Cal. App. 2d 698, 709, 252 P.2d 642 (1953)).

In fashioning the injunctive relief granted here, the trial court considered numerous factors. These included the unlawful nature of the initial agreement under the Franchise Investment Protection Act, DeShazer's good faith belief that the agreement was legal, the parties' respective efforts in making the Washington franchise a success, DeShazer's transfer of the Washington corporation to the Nelsons and the ultimate right of NFRCI to the use of its name. The court also considered the interest of members of the public in avoiding the substantial possibility of confusion resulting from two organizations operating similar businesses under similar names in the same area, and the potential for this confusion resulting in damage to each of the parties in the event that a customer, dissatisfied with the services provided by one, would impute that dissatisfaction to the other.

While the trial court expressed its intention to rely on these findings in the course of its future rulings on the remaining issues,[4] not all of the findings and conclusions are

---

making that determination, however, a court does not adjudicate the ultimate rights of the parties in the lawsuit. *See Washington Fed'n of State Employees*, 99 Wn.2d at 888 (citing *Tyler Pipe Indus., Inc. v. Department of Rev.*, 96 Wn.2d 785, 793, 638 P.2d 1213 (1982)).

[4]*See* CR 65(a)(2) ("[A]ny evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial.").

final rulings reviewable by this court at this juncture. The trial court's determination that there was no just reason for delay and its direction that final judgment be entered was explicitly limited to the injunctive relief granted.[5] At oral argument the parties agreed that the trial court made final decisions with respect to two issues: (1) that the percentage markup on the cost of the materials in conjunction with the requirements provision was unenforceable as a violation of the Franchise Investment Protection Act, and (2) that the agreement otherwise remained in effect since it was not terminated either by the Nelsons' June 7, 1989, letter to DeShazer or by DeShazer's October 24, 1989, letter to the Nelsons. These issues are therefore properly before us on review.[6]

## II
### ENFORCEABILITY OF ROYALTY PROVISION

The trial court concluded that the royalties provided for in the Total Requirements Agreement, calculated as a per-

---

[5]*See* CR 54(b); RAP 2.2(d). CR 54(b) provides in pertinent part:

"When more than one claim for relief is presented in an action, . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims . . . only upon an express determination in the judgment, supported by written findings, that there is no just reason for delay and upon an express direction for the entry of judgment. . . . In the absence of such findings, determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims . . . shall not terminate the action as to any of the claims . . . and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

RAP 2.2(d) provides in pertinent part:

"In any case with . . . multiple claims for relief . . . an appeal may be taken from a final judgment which does not dispose of all the claims . . . but only after an express direction by the trial court for entry of judgment and an express determination in the judgment, supported by written findings, that there is no just reason for delay."

[6]The trial court did not make written findings in support of its CR 54(b) determination. However, the reason for certifying the two issues we review here is apparent from the record, and the findings requirements of CR 54(b) and RAP 2.2(d) do not prevent review under these circumstances. *Pepper v. King Cy.*, 61 Wn. App. 339, 350-51, 810 P.2d 527 (1991).

centage of the wholesale cost of food supplies, violated RCW 19.100.180(2)(d). That section provides that

> it shall be an unfair or deceptive act or practice or an unfair method of competition and therefore unlawful and a violation of this chapter for any person to:
>
> . . . .
> (d) Sell, rent, or offer to sell to a franchisee any product or service for more than a fair and reasonable price.

In reaching its conclusion on this issue, the trial court was concerned both with the amount of the markup and with the method used, particularly since that method involved what it regarded as "probably" an unlawful tying arrangement.[7] The trial court stated in its conclusions of law:

> The practice by NFRCI and DeShazers of marking up the wholesale price of products and supplies to NFRC/Washington and to plaintiffs Nelson by a percentage of food costs and requiring the plaintiffs, Nelson and NFRC/Washington, to purchase all products and supplies from NFRCI was a violation of the Washington Franchise Investment Act, RCW 19.100-.180(2)(D), and was an unfair and deceptive business practice and in violation of RCW 19.86 (the Consumer Protection Act).[8]

---

[7]The trial court's comments in its oral ruling suggest that it considered this provision an illegal tying arrangement in violation of RCW 19.100.180(2)(b), which provides that

> it shall be an unfair or deceptive act or practice or an unfair method of competition and therefore unlawful and a violation of this chapter for any person to:
>
> . . . .
> (b) Require a franchisee to purchase or lease goods or services of the franchisor or from approved sources of supply unless and to the extent that the franchisor satisfies the burden of proving that such restrictive purchasing agreements are reasonably necessary for a lawful purpose justified on business grounds, and do not substantially affect competition . . ..

However, because the trial court had found that the arrangement was also a violation of RCW 19.100.180(2)(d), it did not address this issue in its written findings of fact and conclusions of law.

[8]RCW 19.100.190(1) provides that the "commission of any unfair or deceptive acts or practices or unfair methods of competition prohibited by RCW 19.100-.180 [necessarily] constitute[s] an unfair or deceptive act or practice" under the Consumer Protection Act, RCW 19.86. Thus, the court's conclusion under that act does not depend on an independent analysis of the violation.

■ We agree with the trial court that computing the "royalty" payments based on the cost of food supplies the franchisee was *required* to purchase through the franchiser was a violation of the Franchise Investment Protection Act, RCW 19.100.180(2)(d), which prohibits charging more than a reasonable rate for supplies purchased under a requirements contract.

NFRCI's argument that there was no violation because neither party regarded it as a cost of food is not persuasive. Having admitted that the percentage markup on food supplies was a royalty payment and that the underlying agreement was a franchise agreement, NFRCI cannot now avoid the requirements of the act on the ground that the parties knew what it really was. One of the purposes of the act is to prevent unfair and oppressive business practices by requiring full disclosure of the business arrangement. *See generally* Chisum, *State Regulation of Franchising: The Washington Experience*, 48 Wash. L. Rev. 291 (1972-1973). To accept NFRCI's argument would require us to vitiate that statutory purpose. NFRCI also tacitly admitted that the royalty provision was improper under the act when it changed the manner in which the royalty was calculated at the time it finally registered its franchise in Washington.

### III
### ENFORCEABILITY OF EXCLUSIVE TERRITORY PROVISION

■ The trial court found that the Total Requirements Agreement was not terminated either by the Nelsons' June 7, 1989, letter to DeShazer or by DeShazer's October 24, 1989, letter to the Nelsons. It therefore held that the exclusive territory covenant remained enforceable even though the Nelsons had ceased to perform under the terms of the contract. While we agree with the trial court that neither letter terminated the agreement, it is clear from their actions that both parties had repudiated the contract prior to NFRCI's hiring Randy Nelson in October 1989. 17A Am. Jur. 2d *Contracts* § 582 (1991) (where one party renounces a contract without cause before the time for performing it has

elapsed, he authorizes the other party to treat it as terminated). We therefore reverse the trial court's conclusion that competition by NFRCI with the Nelsons and NFRC of Washington within the Nelsons' exclusive territory in Washington constituted a violation of RCW 19.100.180(2)(f) and by extension, an unfair and deceptive business practice under RCW 19.86. Based on the Nelsons' refusal to make the royalty payments under the contract and their withdrawal from NFRCI, NFRCI's performance under the contract was excused.

■ Further, it would be inequitable to allow the Nelsons to benefit from the provisions of the agreement favorable to them while permitting them to ignore those which impose obligations on them. In *Costandi v. AAMCO Automatic Transmissions, Inc.*, 456 F.2d 941 (9th Cir. 1972), the Ninth Circuit upheld a trial court injunction prohibiting franchisees who had declared themselves no longer bound by the terms of the franchise agreement from continuing to use the franchiser's name. The court observed:

> It is an elementary rule of contract law that one cannot repudiate a contract and at the same time retain the consideration or any part thereof received under the contract. . . .
>
> . . . .
> It must be kept in mind that the franchisees here have declared themselves no longer bound by the terms of the franchise agreements and that they no longer consider themselves bound by the terms of their respective agreements. The district court clearly recognized the gross inequity of allowing the franchisees to reap the benefits of doing business under the AAMCO name without paying their proportionate share of the costs of those benefits pending the final outcome of this case.

*Costandi*, 456 F.2d at 942-43. For the same reasons, we conclude that the Nelsons should not have been permitted to enforce the exclusive territory provisions of the agreement after both they and NFRCI had repudiated that agreement. We therefore reverse that portion of the injunction prohibiting NFRCI from operating in Washington after they hired Randy Nelson in October 1989.

In summary, we affirm the trial court's determination that the Total Requirements Agreement violated the Fran-

chise Investment Protection Act. We affirm all aspects of the injunction except that portion prohibiting NFRCI from operating in Washington in competition with NFRC of Washington after October 1989, which we reverse. The case is remanded to the trial court for determination of all remaining issues.

SCHOLFIELD and COLEMAN, JJ., concur.

Reconsideration denied March 10, 1992.

Review granted at 119 Wn.2d 1007 (1992).