

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE SEP 1 9 2019

CHIEF JUSTICE

This opinion was
filed for record
at 8 am on Sept 19, 2019

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON IN<br><br>MONEY MAILER, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>WADE G. BREWER,<br><br>    Defendant.<br><br>―――――――――――<br><br>WADE G. BREWER,<br><br>    Counterclaim Plaintiff,<br><br>  v.<br><br>MONEY MAILER, LLC, and MONEY MAILER FRANCHISE CORP, a Delaware corporation,<br><br>    Counterclaim Defendants. | No. 96304-5<br><br>En Banc<br><br>Filed   SEP 1 9 2019 |

WIGGINS, J.—The United States District Court for the Western District of Washington asks us to answer two certified questions about the meaning of "fair and reasonable price" in RCW 19.100.180(2)(d), part of the Franchise Investment Protection Act (FIPA):

> [(1)] For purposes of FIPA's prohibition on selling "to a franchisee any product or service for more than a fair and reasonable price" (RCW 19.100.180(2)(d)), may the franchisee rely on the price at which the franchisor is able to obtain the product or service in the absence of evidence indicating that the price was not a true market price?
>
> [(2)] Does a franchisor violate RCW 19.100.180(2)(d) as a matter of law when it charges the franchisee twice what it pays for a product or service?

Order Certifying Questions to the State Supreme Ct. *Money Mailer* Certification Order) at 4-5.

In answering these questions, we first define "fair and reasonable price" as a question of fact regarding what prudent franchisors and franchisees in similar circumstances would consider an appropriate price. In light of this definition, we answer both questions in the negative. We hold that (1) the fair and reasonable price is not inherently established by the price at which the franchisor obtains the good and (2) a franchisor does not violate the FIPA as a matter of law by selling a product or service to a franchisee for twice the price at which the franchisor obtained it.

2

## FACTS AND PROCEDURAL HISTORY

In 2011, Money Mailer[1] and Wade Brewer entered a 10-year franchisor/franchisee relationship. *Money Mailer, LLC v. Brewer*, 2018 WL 3156901, at *2 (W.D. Wash. June 28, 2018) (Order Granting in Part Brewer's Mot. for Summ. J.). Money Mailer is an "envelope-based direct marketing company" whose franchisees sell local businesses advertisement space in Money Mailer's shared envelopes, which are mailed to potential customers in the area. Appellants' Opening Br. on Certified Questions (Appellant's Br.) at 4-6. Money Mailer requires its franchisees to enter into contracts with Money Mailer for services related to "'printing and inserting advertisements into shared mail envelopes.'" *Money Mailer*, 2018 WL 3156901, at *2.

In 2015, Money Mailer sued Brewer in federal district court, alleging breach of contract and nearly $2 million in damages. Brewer counterclaimed against Money Mailer, arguing, among other things, that Money Mailer had violated the FIPA by selling him "products and services . . . at more than a fair and reasonable price," contrary to RCW 19.100.180(2)(d).

Brewer moved for partial summary judgment on the alleged FIPA violation. The district court found it undisputed that Money Mailer sold printed advertisements to Brewer at twice the price at which Money Mailer obtained and/or produced them.

---

[1] Brewer counterclaimed against both Money Mailer LLC and Money Mailer Franchise Corporation. Due to the "significant organizational overlap" between the companies, the district court treated them as one entity for purposes of the FIPA. *Money Mailer, LLC v. Brewer*, 2018 WL 3156901, at *2 (W.D. Wash. June 28, 2018) (Order Granting in Part Brewer's Mot. for Summ. J.). The two organizations did "not dispute that they operate as one for the purposes of FIPA." *Id.* We adopt the Money Mailer reference to both organizations herein.

*Money Mailer*, 2018 WL 3156901, at *2. The court found that this markup violated

RCW 19.100.180(2)(d) as a matter of law and, on this ground, granted in part Brewer's

summary judgment motion. *Id.* at *3-4.

In concluding that Money Mailer's behavior violated the FIPA, the district court

relied on two conclusions regarding Washington law:

> First, the Court impliedly found that a franchisee may generally rely on
> the price at which a franchisor purchased a particular good or service to
> show what the "fair and reasonable price" for that service is. Second, the
> Court found that selling a franchisee a particular good or service for twice
> what it cost the franchisor is not a "fair and reasonable price" and violates
> FIPA as a matter of Washington law.

*Money Mailer* Certification Order at 4. After denying Money Mailer's motion for

reconsideration and/or interlocutory review, the district court certified two questions to

this court, asking us to clarify whether those two rules of law are correct. *Id.* at 4-6.

The district court first asks:

> For purposes of FIPA's prohibition on selling "to a franchisee any product
> or service for more than a fair and reasonable price"
> (RCW 19.100.180(2)(d)), may the franchisee rely on the price at which
> the franchisor is able to obtain the product or service in the absence of
> evidence indicating that the price was not a true market price?

*Id.* at 4. Recognizing that Washington law differs from many states in the protection it

allows to franchisees, the court "impliedly found that a franchisee may generally rely

on the price at which a franchisor purchased a particular good or service to show what

the 'fair and reasonable price' for that service is." *Id.* Put differently, this question asks,

Is the price at which the franchisor obtains the good or service inherently the fair and

reasonable price? *See Allen v. Dameron*, 187 Wn.2d 692, 701, 389 P.3d 487 (2017)

4

("We have the authority to reformulate certified questions." (citing *Danny v. Laidlaw Transit Servs., Inc.*, 165 Wn.2d 200, 205, 193 P.3d 128 (2008) (plurality opinion))).

The district court next asks:

> Does a franchisor violate RCW 19.100.180(2)(d) as a matter of law when it charges the franchisee twice what it pays for a product or service?

*Money Mailer* Certification Order at 4-5. This question is drawn from the district court's second finding that "selling a franchisee a particular good or service for twice what it cost the franchisor is not a 'fair and reasonable price' and violates FIPA as a matter of Washington law." *Id.* at 4.

Both questions are questions of law. The federal court has asked us to resolve only those questions of law. *See id.* at 4-6. We therefore resolve only whether the district court correctly interpreted Washington law; we do not resolve whether summary judgment was proper under the facts of this case. Resolving the questions in this manner, we answer *no* to both.

## STANDARD OF REVIEW

We review certified questions from federal courts de novo. *Broughton Lumber Co. v. BNSF Ry. Co.*, 174 Wn.2d 619, 624, 278 P.3d 173 (2012) (citing *Bradburn v. N. Cent. Reg'l Library Dist.*, 168 Wn.2d 789, 799, 231 P.3d 166 (2010)). Legal issues in certified questions are not considered in the abstract but are based on the record provided by the federal court. *Id.* (citing *Bradburn*, 168 Wn.2d at 799 (citing RCW 2.60.030(2))). We review questions of statutory interpretation de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

5

ANALYSIS

This case presents, at its core, a question of statutory interpretation: What is the meaning of "fair and reasonable price" in the FIPA? We first define "fair and reasonable price," and then we apply that definition to answer the certified questions.

I. "Fair and reasonable price" is a question of fact regarding what prudent franchisors and franchisees in similar circumstances would regard as an appropriate price

Both certified questions involve the meaning of RCW 19.100.180(2)(d). Located in the portion of the FIPA governing the "[r]elation between franchisor and franchisee," section .180 reads:

> (2) For the purposes of this chapter and without limiting its general application, it shall be an unfair or deceptive act or practice or an unfair method of competition and therefore unlawful and a violation of this chapter for any person to:
>
> . . . .
>
> (d) Sell, rent, or offer to sell to a franchisee any product or service for more than a fair and reasonable price.

RCW 19.100.180(2)(d).

This section does not define "fair and reasonable price." Nor does the definitions section of the FIPA. RCW 19.100.010. Indeed, no portion of Title 19 RCW defines "fair and reasonable price," though the term recurs throughout. *See, e.g.,* RCW 19.120.080(2)(c). In *Nelson v. National Fund Raising Consultants, Inc.,* we discussed "fair and reasonable price"—but offered no definition of the phrase. 120 Wn.2d 382, 842 P.2d 473 (1992). Lacking an explicit statutory or case law definition, we turn to the principles of statutory interpretation for guidance.

6

The goal of statutory interpretation is ascertaining and carrying out the intent of the legislature. *Campbell & Gwinn*, 146 Wn.2d at 9-10. We first look to the plain meaning of the statutory language. *Id.* at 10. Plain meaning comes from the statutory text itself as well as related statutes. *Id.* at 11-12. We employ legislative history to clarify any ambiguity of the plain meaning of the language. *Id.* at 12.

Here, both the plain language and the legislative history support the conclusion that "fair and reasonable price" is a question of fact regarding what prudent franchisors and franchisees in similar circumstances would regard as an appropriate price. The circumstances relate to market forces.

### A. Plain language

The plain language of the statute indicates, first and foremost, that whether a price is "fair and reasonable" is a question of fact. The legislature chose, in crafting the FIPA, to use the word "reasonable." The word "reasonable" has a long history in our jurisprudence, consistently invoking questions of fact. *See, e.g., Wuthrich v. King County*, 185 Wn.2d 19, 27, 366 P.3d 926 (2016) ("Whether the roadway was reasonably safe and whether it was reasonable for the County to take (or not take) any corrective actions are questions of fact . . . ."); *Bodin v. City of Stanwood*, 130 Wn.2d 726, 735-36, 927 P.2d 240 (1996) (citing *Gordon v. Deer Park Sch. Dist. No. 414*, 71 Wn.2d 119, 122, 426 P.2d 824 (1967) ("Whether one who is charged with negligence has exercised reasonable care is a question of fact for the jury.")); *Wood v. City of Seattle*, 57 Wn.2d 469, 471-72, 358 P.2d 140 (1960) ("Whether a person's conduct has met the reasonably prudent man test is a question of fact for determination by the jury . . . ." (citing *West v. Mount Vernon Sand & Gravel, Inc.*, 56

7

Wn.2d 752, 355 P.2d 795 (1960))). Therefore, by using the word "reasonable" here, the legislature intended that whether a price is "fair and reasonable" is a question of fact.

The term "fair and reasonable" also indicates that subsection .180(2)(d) invokes a question of fact. Federal courts, as well as the courts of other states, have repeatedly made clear that determinations of what is "fair and reasonable" are questions of fact.[2] Indeed, treating questions of what is "fair and reasonable" as questions of fact goes back centuries.[3] While our courts have not explicitly held that "fair and reasonable" invokes a question of fact, the legislature's use of the term supports the conclusion that whether a price is "fair and reasonable" is a question of fact.

The use of "reasonable" has a further implication: it indicates that a fact finder must adopt the perspective of a prudent person under the circumstances when determining whether a price is "fair and reasonable." At common law, we have long employed the word "reasonable" in the phrase "reasonable care," which means the care that "a reasonably prudent person would have exercised under the same or

---

[2] *E.g.*, *Minn. Lawyers Mut. Ins. Co. v. Comm'r*, 285 F.3d 1086, 1092 (8th Cir. 2002) ("'The determination of a fair and reasonable estimate of a taxpayer's unpaid losses is essentially a valuation issue and a question of fact.'" (quoting *Hanover Ins. Co. v. Comm'r*, 598 F.2d 1211, 1220 (1st Cir. 1979))); *Porter v. Toledo Wimsett Fin. & Thrift Co.*, 13 Ohio L. Abs. 509, 510 (Ohio Ct. App. 1933) ("[T]he test to be applied to a sale of this character is whether the sale was fair and reasonable and the price what could be reasonably expected. This was a question of fact to be determined by a jury." (citation omitted)).

[3] *E.g.*, *Huff v. Wolfe*, 48 Ill. App. 589, 591-92 (1893) ("Whether the amount agreed upon by the parties in this case as the proper 'fees and compensation' of the guardian was fair and reasonable, was practically the sole contention presented to the jury. It was a question of fact."); *Kent v. Phelps*, 2 Day 483, 483 (Conn. 1807) ("[W]hether such charge was fair and reasonable is a question of *fact* to be left to the jury.").

similar circumstances." *Chadwick v. Ek*, 1 Wn.2d 117, 129, 95 P.2d 398 (1939) (citing *Scott v. Pac. Power & Light Co.*, 178 Wash. 647, 35 P.2d 749 (1934); *N. Coast Power Co. v. Cowlitz, Chehalis & Cascade Ry.*, 108 Wash. 591, 185 P. 615 (1919)). Therefore, a price is fair and reasonable when it accords with a price acceptable to a prudent person in similar circumstances.

But here, what are these similar circumstances? Plainly, the sale of products or services to a franchisee within a franchise relationship is such a circumstance. *See* RCW 19.100.180(2)(d). We must therefore ask what a prudent franchisor and franchisee would look to in the course of such a sale and what they would consider to determine whether a sale is fair and reasonable.

The term expresses what prudent parties would look to in considering the fairness and reasonableness of a sale: the current market. Definitions of terms similar to "fair and reasonable price" show the importance of taking the current market into account. The revised fourth edition of *Black's Law Dictionary*, which was current at the time the FIPA was passed, defines "fair and reasonable value" as "the best price obtainable at a voluntary sale." BLACK'S LAW DICTIONARY 714 (rev. 4th ed. 1968). *Black's* similarly defines "fair market value" as the "[p]rice at which a willing seller and willing buyer will trade." *Id.* at 716.

In its 11th edition, *Black's* equates "value" to "price." BLACK'S LAW DICTIONARY 1864 (11th ed. 2019) (defining "value" as "[t]he monetary worth or price of something"). It defines "fair value" as "[a]n estimate of a good, service, or asset's potential price, based on a rational and unbiased assessment of the amount at which it could currently be bought and sold between willing parties." *Id.* at 1865. The 11th

9

edition also states that "fair market value" is equivalent to "fair and reasonable value," and defines both as "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction; the point at which supply and demand intersect." *Id.* These definitions demonstrate the importance of taking the market into account.

### B. Legislative History

The legislative history of the FIPA resolves whatever ambiguity remains in the language of subsection .180(2)(d). *See Campbell & Gwinn*, 146 Wn.2d at 12 (we turn to legislative history to resolve ambiguity in the plain language of statutes). The legislative history of subsection .180(2)(d) confirms the importance of the marketplace in resolving whether a price is fair and reasonable. The legislature explained that

> [r]equiring fair and reasonable prices on all charges will give the franchisors flexibility necessary for price [fluctuations] but deny to them the current power of unilateral price changes. Such power is particularly vicious when combined with any variation of the exclusive supply contract.

Comments on the Proposed Investment Franchise Act, S.B. 755, 42d Leg., 1st Ex. Sess. (Wash. 1971) on file with Wash. State Archives. In other words, the legislature intended for the prices to vary based on "fluctuations," presumably those of the market, and did not intend to give franchisors free reign to set any price they choose.

Comments by a draftsperson of the FIPA also support this conclusion. Discussing the change in an early draft of the FIPA from "*except at*" a fair and reasonable price to "*more than* a" fair and reasonable price (emphasis added), a draftsperson explained that the new language

10

> more clearly reflected our intent of allowing the industry to determine through the supply and demand mechanisms a reasonable price and then prohibiting the sale of products or services for more than that price by the franchisor to the franchisee rather than to prescribe a price at which the franchisor can sell products or services to the franchisee.

James Fletcher, Franchise Investment Protection Act 37 (1971) (unpub. research paper, Univ. of Wash. Sch. of Law) (on file with the Wash. State Law Library) Thus the market price ("supply and demand mechanisms") is to be taken into consideration. But no particular price is mandated.

### C. Determining a "fair and reasonable price"

The plain language and the legislative history of the FIPA make clear that a broad understanding of the market and market forces must inform a fact finder determining whether prices are fair and reasonable under the FIPA. A fact finder must take into consideration market forces writ broadly. This includes what the district court relied on—the price at which the franchisor acquired the products or services—but reaches beyond. The prices of competitor franchisors should be taken into account, including whether the prices of all franchisors are the same. So, too, should the statements of profit margin made by the franchisor.[4]

Other relevant factors include the franchisor's charges to other franchisees for the same or similar products or services; what other similarly situated franchisors charge similarly situated franchisees for the same or similar products or services; business and industry practices; the price the franchisor pays for the products or services; and the price at which the franchisee could obtain the same or equivalent

---

[4] Of course, this is information that will likely be in the possession of the franchisor, not the franchisee, but it might be available to the franchisee in the normal course of discovery.

11

products or services elsewhere, including in an arm's-length deal on the open market. There are other, less tangible market forces at work as well. For instance, the fact finder should consider the value that the franchisor adds to the product or service, if any.

Other market forces can apply; this list is not exhaustive. Nor is it exclusive or mandatory: not every factor need be referenced or used.

These factors allow the finder of fact to take complex scenarios into account. For example, if the franchisor obtains a product for price $x$, and the franchisee could only obtain it on the open market for $5x$, then selling it at the price of $2x$ might not be unfair or unreasonable—but if all other similarly situated franchisors are selling it for $1.5x$, then the price of $2x$ may be unfair or unreasonable.

Money Mailer has a different view of the meaning of "fair and reasonable price," arguing that a "fair and reasonable price" is determined solely by the market price of the product or service at a comparable level of distribution. Appellant's Br. at 22-23. Under this proposed definition, a price is fair and reasonable if it is at or below the price at which the franchisee could otherwise obtain the goods. *Id.* at 31.

Money Mailer makes no textual argument supporting its definition of "fair and reasonable price."[5] It instead provides us with ample reason to reject its rule. Money

---

[5] In its briefing before this court, Money Mailer argued that this definition came from the meaning of "bona fide wholesale price," found in subsection .010(8) of the FIPA—a term that, Money Mailer argued, is equivalent to "fair and reasonable price." Appellant's Br. at 17-19; Appellant's Answer to Amicus at 16. These arguments were misguided as the statute provides no reason to connect the terms. In any event, at oral argument, Money Mailer expressly disclaimed any link between "fair and reasonable price" and "bona fide wholesale price." Wash. Supreme Court oral argument, *Money Mailer, LLC v. Brewer,* No. 96304-5 (Mar. 19, 2019), at 1 min., 16 sec. (noting its

Mailer argues at length that per se rules are inappropriate in this context, noting that per se rules "'almost always tend to restrict competition and decrease output.'" *Id.* at 38 (quoting *Leegin Creative Leather Prods. Inc. v. PSKS, Inc.*, 551 U.S. 877, 886, 127 S. Ct. 2705, 168 L. Ed. 2d 623 (2007)). Yet Money Mailer offers a per se rule of its own: under Money Mailer's definition, any price at or below the price available to the franchisee on the open market is fair and reasonable per se. The concerns Money Mailer cites against applying per se rules in this situation—for instance, that a "per se rule is appropriate only after the courts have weighed all of the circumstances and amassed considerable experience with [the issue]"—militate against Money Mailer's rule, as well. *Id.* at 39. Adopting Money Mailer's definition would "not be based on any history or experience, but instead on an arbitrary assumption": the assumption that nothing matters but the price at which the franchisee could itself obtain the product or service. *Id.*

We agree with Money Mailer and decline to "replace[ ] [a] factual and reasoned inquiry with [a] simplistic formula[ ]." *Id.* While the price at which a franchisee could otherwise obtain the goods is certainly a *factor* in whether a price is fair and reasonable, it alone does not resolve whether a price is "fair and reasonable." The FIPA requires consideration of other facts, as the discussion above makes clear.

Brewer also argues for a rule that lacks support from the case law. Brewer states that we "need only determine what a 'fair and reasonable price' is *not*." Resp't's

---

argument is "separate from" any connection between "fair and reasonable price" and "bona fide wholesale price"), *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. We therefore do not consider what "bona fide wholesale price" means.

13

Br. at 13. In that vein, Brewer argues that "any markup of goods or services" violates the "fair and reasonable price" provision of subsection .180(2)(d). *Id.* at 14.

Brewer's rule would mean that the price paid by the franchisor—and every advantage the franchisor had in getting such a price—must be passed on to the franchisee. Wash. Supreme Court oral argument, *Money Mailer, LLC v. Brewer*, No. 96304-5 (Mar. 19, 2019), at 35 min., 45 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. We need not delve into the details of economics to observe the problems with such a rule. First, from a plain language and legislative history standpoint, there is no reason to think the legislature intended "fair and reasonable price" to mean "the price at which the franchisor obtained the goods." Had the legislature meant for Brewer's interpretation to be the rule, it would have said so. Second, prices are raised between differing levels of distribution frequently: for instance, a wholesaler charges a retailer a higher price than the wholesaler paid the supplier for the goods. True, a franchisor-franchisee relationship is not identical to a wholesaler-retailer relationship; it is for such reasons that our legislature enacted the FIPA. But the existence of the FIPA does not inherently prevent franchisors from increasing prices of the products and services they sell to their franchisees.

Brewer disagrees, relying solely on *Nelson* to support his definition of "fair and reasonable price." Resp't's Br. at 14. Contrary to Brewer, *Nelson* does not stand for the proposition that any markup is impermissible. In *Nelson*, the franchisee ordered the supplies locally. 120 Wn.2d at 385. The supplier then sent the bill to the franchisor, who marked up the price by about 20 percent and sent that marked-up bill to the

franchisee. *Id.* The trial court found that this act violated RCW 19.100.180(2)(d) and granted injunctive relief to the franchisee. *Nelson v. Nat'l Fund Raising Consultants, Inc.*, 64 Wn. App. 184, 191, 823 P.2d 1165 (1992), *rev'd in part and aff'd in relevant part*, 120 Wn.2d 382. The Court of Appeals, reviewing for abuse of discretion, affirmed the trial court's injunction. *Id.* at 188, 194. It issued no broad holding regarding the impermissibility of markups. *Id.* at 193.

Similarly, we did not announce a broad rule that any markup of prices is impermissible in our own review of *Nelson*. *See* 120 Wn.2d at 392. Rather, we affirmed the Court of Appeals only with respect to FIPA, reasoning that none of the arguments made by the franchisor about the meaning of the FIPA were persuasive. *Id. Nelson* did not announce or indicate the existence of a general rule prohibiting all price markups. *See id.* at 388. Brewer cannot read into *Nelson* things we did not say.

Brewer also claims that "[t]his case is *Nelson redux*," arguing we must reach the same result because the facts of the cases are the same. Resp't's Br. at 14. But this case is not "*Nelson redux*." As noted above, the *Nelson* franchisee ordered the supplies locally, and the franchisor, having received the bill, then marked up the prices and sent that marked-up bill to the franchisee. 120 Wn.2d at 385. Unlike *Nelson*, Money Mailer paid for the goods directly, or produced them itself, and then sold them at an increased price to Brewer. *Money Mailer*, 2018 WL 3156901, at *1-2. Money Mailer did not mark up the prices of goods that the franchisee had itself ordered, as occurred in *Nelson*. *See id.*; *see also* Appellant's Answer to Amicus at 15 (correctly making the same argument). In *Nelson*, it appears that no value was added to the product or service; the markup was a pure increase in price of a good that the

15

franchisee apparently could have obtained on its own, outside of the franchise relationship. *See* 120 Wn.2d at 385.[6] Here, there might very well have been such value added that, alongside other factors, justified the markup. We therefore cannot see this case as "*Nelson redux.*"

In any event, due to the procedural posture of this case, it is for the fact finder, not this court, to determine whether the markup here was fair and reasonable. We are not tasked with resolving whether summary judgment was proper, only with answering the certified questions presented by the district court—to which we now turn.

II.   We answer *no* to each certified question

We now answer the certified questions. We bear in mind our definition of "fair and reasonable price," which, restated, is a question of fact regarding what prudent franchisors and franchisees in similar circumstances would regard as an appropriate price, paying particular attention to market forces. The answer to both is *no.*

A. *A franchisee may not rely solely on the price at which the franchisor obtains a product or service to establish the "fair and reasonable price"*

The district court has asked, "For purposes of FIPA's prohibition on selling 'to a franchisee any product or service for more than a fair or reasonable price' (RCW 19.100.180(2)(d)), may the franchisee rely on the price at which the franchisor is able to obtain the product or service in the absence of evidence indicating that the price was not a true market price?" *Money Mailer* Certification Order at 4. We surmise that the court asked this question because it had "impliedly found that a franchisee

---

[6] We caution, however, that *Nelson* is not explicit about this. *See Nelson*, 120 Wn.2d at 385. There may have been other reasons the trial court found the markup unfair or unreasonable. *See id.*

may generally rely on the price at which a franchisor purchased a particular good or service to show what the 'fair and reasonable price' for that service is." *Id.* The district court had concluded that "[a]bsent some evidence of a special discount or other indication that the price Money [Mailer] paid was not a market price, the fair and reasonable costs of the services were established by what Money Mailer was actually paying for the printing services." *Id.* at 2. In other words, the district court concluded that the fair and reasonable price of a good or service under .180(2)(d) is established by the price the franchisor pays for that good. This question therefore essentially asks, Is the "fair and reasonable price" inherently the price at which the franchisor obtains the good? Or, put differently, Is the franchisee entitled to get the good at the same price the franchisor paid for it? *See Allen*, 187 Wn.2d at 701.

The answer to this question, under the definition of "fair and reasonable price," is *no*. True, a franchisee is free to present whatever evidence it wants and shape its argument in whatever manner it prefers. It may therefore rely on the price at which the franchisor obtained the good. But a price is not fair and reasonable under .180(2)(d) merely because it is the price the franchisor pays. As the definition of "fair and reasonable price" makes clear, determining whether a price is "fair and reasonable" takes more into account. The price at which the franchisor obtains a good or service is *not* inherently the fair and reasonable price.[7]

---

[7] We could interpret question 1 differently and view it as asking whether, in the absence of other competent, admissible evidence, the difference between the prices paid and charged is sufficient to create a question of material fact that would allow the franchisee to overcome summary judgment. If so, the answer is *yes*. However, we understand question 1 as asking whether the price at which the franchisor obtains the good alone *establishes* the fair and reasonable price, in

17

Brewer, even as he argues that the answer to this question is *yes*, nearly admits that the price at which the franchisor obtains the goods does *not* inherently establish the fair and reasonable price. In oral argument, he noted that "if there is other evidence [beyond the price at which the franchisor obtained the goods], that can be considered too"—implying that no such other evidence existed here. Wash. Supreme Court oral argument, *supra*, at 26 min., 45 sec. to 26 min., 54 sec. But there was other evidence here, which the district court concluded was immaterial. *See Money Mailer*, 2018 WL 3156901, at *3. Indeed, according to the district court, Money Mailer, as part of its motion for reconsideration, had proffered evidence purporting to show that "Brewer would likely be unable to obtain printing services on the open market for less than what Money Mailer was charging him." *Money Mailer* Certification Order at 2. The district court concluded that such evidence had no bearing on whether Money Mailer had violated the FIPA. *Id*. But as discussed above, such evidence is central to the question of whether a price is "fair and reasonable." Furthermore, Brewer is wrong is to assert, without other evidence, that the price paid by the franchisor must be the fair and reasonable price. *See* Wash. Supreme Court oral argument, *supra*, at 26 min., 45 sec. to 26 min., 54 sec. The FIPA does not support that interpretation.

*B. A franchisor does not violate subsection .180(2)(d) as a matter of law merely by charging a franchisee twice what the franchisor pays for a product or service*

The district court has also asked, "Does a franchisor violate RCW 19.100.180(2)(d) as a matter of law when it charges the franchisee twice what it pays

---

and of itself. The answer to that is *no*, for much the same reason: whether a price is fair and reasonable is a question of fact.

for a product or service?" *Money Mailer* Certification Order at 4-5. Considering our definition of "fair and reasonable price," the answer to this question must also be *no*. No such per se rule exists because what is "fair and reasonable" is a question of fact. Thus there may be situations in which a franchisor may charge a franchisee twice what it paid to acquire a good or service but nevertheless still be charging a fair and reasonable price. A per se rule does not reflect our law.

Brewer disagrees. But Brewer's only argument is that *Nelson* stands for the existence of this per se rule. As discussed above, *Nelson* created no such rule.

At several points, Brewer also insists that the district court's question 2 asks us to decide whether Money Mailer's price was "fair and reasonable," as a matter of law, under the facts of this case—not whether a price is per se unfair or unreasonable when a franchisor charges the franchisee twice what it pays for a product or service. *E.g.*, Resp't's Br. at 21. Indeed, at oral argument, when explicitly asked whether Brewer considered this question factual or legal, Brewer answered that it was factual. Wash. Supreme Court oral argument, *supra*, at 27 min., 13 sec. to 27 min., 55 sec. This is incorrect. The district court clearly concluded that as a matter of law, any 100 percent markup violated subsection .180(2)(d). *Money Mailer* Certification Order at 4. When the district court asked question 2, it asked whether that conclusion was correct: that is, whether the district court correctly articulated the law of our state. Nothing in the district court's certification order indicates the court was asking us whether Money Mailer's markup itself violated the FIPA as a matter of law.

Similarly, Brewer accuses Money Mailer of having concealed its price markups by not disclosing what it paid for the goods, which plays into why Money Mailer's prices

were allegedly unfair and unreasonable. Resp't's Br. at 8, 25; Wash. Supreme Court oral argument, *supra*, at 19 min., 17 sec. ("What's at stake is really how transparent do franchisors have to be? The issue is really can [Money Mailer] maintain these hidden profit centers . . . ."). It is true that we held in *Nelson* that disclosure of prices does not *prevent* a price from being unfair or unreasonable under subsection .180(2)(d). *Nelson*, 120 Wn.2d at 389. But disclosure of "profit centers" is neither here nor there for the purposes of answering question 2. We are asked whether 100 percent markups are impermissible as a matter of law with respect to subsection .180(2)(d). *Money Mailer* Certification Order at 4-5. The answer to question 2 remains *no*, irrespective of disclosure.

In answering question 2 in the negative, we do not hold that whether a price is "fair and reasonable" can never be resolved as a question of law. "'[W]hen reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law.'" *Harvey v. County of Snohomish*, 157 Wn.2d 33, 43, 134 P.3d 216 (2006) (quoting *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985)). But, again, we are not tasked with resolving whether reasonable minds could differ as to whether Money Mailer's markups were unfair or unreasonable. We are asked to decide only whether 100 percent markups are *always* unfair or unreasonable. The answer to that question is *no*.

III.   The parties' remaining arguments are meritless

Money Mailer argues that subsection .180(2)(d) does not apply because here the prices of goods were allegedly agreed to at the start of the franchise relationship, not during it. Appellant's Answer to Amicus at 9. We decline to reach this issue as it

lies beyond the scope of the certified questions. We are asked only about the meaning of "fair and reasonable price," not whether .180(2)(d) applies to the factual scenario before us.

Additionally, Brewer has requested sanctions against Money Mailer, and Money Mailer has requested we strike portions of Brewer's opening brief. Resp't's Br. at 27; Appellant's Reply Br. at 17. We deny both motions. Both were made in briefs, and granting either (or both) would not preclude our reaching the merits of the case. RAP 17.4(d) (requiring motions made in briefs be those which, if granted, would prevent our reaching the merits). Equally to the point, both motions lack merit.

## CONCLUSION

We hold that a "fair and reasonable price" in RCW 19.100.180(2)(d) is a question of fact involving what prudent franchisors and franchisees in similar circumstances would regard as an appropriate price. The circumstances must take into account the forces of the market, as described above. We thus answer *no* to both of the certified questions. This opinion answers only questions of law, not fact. Whether Money Mailer violated the FIPA remains a question of fact to be determined by the district court.

_____
Wiggins, J.

WE CONCUR.

_____
Fairhurst, C.J.

_____
Johnson, J.

_____
Madsen, J.

_____
Owens, J.

_____
Stephens, J.

_____
González, J.

_____
Gordon McCloud, J.

_____
Yu, J.